IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERETTA G. WILLIAMS, CHRISTOPHER WILLIAMS<br>*Plaintiffs* | § § § § | |
| -vs- | § § | SA-22-CV-00624-XR<br>*Consolidated Cases* |
| SELECT PORTFOLIO SERVICING, INC.,<br>*Defendant* | § § § § | |

# ORDER

On this day, the Court considered Defendant Select Portfolio Servicing, Inc.'s motion for summary judgment (ECF No. 15) and motion for non-monetary sanctions (ECF No. 16) and Plaintiff's response (ECF No. 19). After careful consideration, the motions are **GRANTED**.

## BACKGROUND

On December 6, 2005, Alberetta Williams executed a promissory note in the principal amount of $118,640 (the "Note"). On the same date, Ms. Williams and her husband, Christopher Williams, executed a deed of trust (together with the Note, the "Loan"), establishing a first lien on the real property located at 8523 Tanbark Drive, San Antonio, Texas (the "Property"). The Loan went into default in October 2010. Through a variety of legal tactics—including multiple bankruptcy filings and abuse of the Texas state courts' perfunctory approach to temporary restraining orders in such cases—Ms. Williams has managed to successfully delay foreclosure on the Property for over a decade, despite not having made a single mortgage payment in that time.[1] As of September 1, 2022, the Loan balance had reached $375,376.17.

---

[1] The Court here takes judicial notice of the prior bankruptcies and lawsuits. *See Krystal One Acquisitions, LLC v. Bank of Am., N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020) (permitting district court to take judicial notice of filings from prior lawsuits because such documents were public records).

I.      **Previous Litigation**[2]

The first case filed by Ms. Williams relating to the Loan was filed in state court in 2012 against the mortgagee, Deutsche Bank National Trust Company, as Indenture Trustee, on Behalf of the Registered Holders of the Accredited Mortgage Loan Trust 2006-1 Asset Backed Notes ("Deutsche Bank"). After the state court issued an *ex parte* temporary restraining order ("TRO") preventing foreclosure, Deutsche Bank removed the case to federal court, where it was dismissed for want of prosecution. *See Williams v. Deutsche Bank Nat'l Tr. Co.*, No. 5:12-CV-01089-FB, ECF Nos. 1, 9 (W.D. Tex. Feb. 26, 2013).

Two years later, Ms. Williams filed another suit in the 438th District Court of Bexar County involving the Loan. *See Williams v. Deutsche Bank Nat'l Tr. Co.*, No. 2014CI05120. The state court again issued a TRO preventing the scheduled foreclosure sale. The parties settled the lawsuit in September 2016. *See Williams v. Deutsche Bank Nat'l Tr. Co.*, No. SA-18-CV-00954-FB, 2020 WL 824111, at *3 (W.D. Tex. Feb. 19, 2020), *report and recommendation adopted* 2020 WL 1902539 (W.D. Tex. Mar. 25, 2020) (describing procedural history). Under the settlement agreement, Ms. Williams agreed to vacate the Property by January 31, 2017, and to leave the Property in broom-swept condition, free of any personal possessions or physical damage. *Id*. If she complied with these conditions, Deutsche Bank's mortgage servicer, Select Portfolio Servicing, Inc. ("SPS"), agreed to pay her $8,000. As part of the settlement, Deutsche Bank rescinded its acceleration of the Note and Williams "surrender[ed] any interest in the Property . . . and agree[d] not to interfere with or contest foreclosure of the Property in any way" and released "all state or federal claims . . . arising from or related to . . . the Property . . . ." *Id.*

---

[2] While Plaintiffs appear to concede that their causes of action are barred by claim preclusion, *see* ECF No. 19 at 3, a brief history of Ms. Williams' previous litigation is necessary here for the purpose of addressing the potential sanctions against Plaintiffs and their counsel.

2

Ms. Williams failed to timely vacate the Property, and when she finally did, it was not in the condition required by the agreement. *Id.*, at *4. An inspection revealed that she had left large piles of trash and debris in the yard and left the Property with missing and/or damaged drywall, ceilings, and flooring throughout the Property due to "mortgagor neglect," with estimated repair costs of $8,300. *Id.* Accordingly, SPS did not tender the $8,000 settlement payment. *Id.* After Williams vacated the Property, SPS sent a new notice of default and intent to accelerate dated August 3, 2017. *Id.* On September 21, 2017, Ms. Williams filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code, but the case was dismissed for failure to make plan payments in February 2018. *See In re Williams*, No. 17-cv-52213-G, ECF No. 25.

Six months after the dismissal of her bankruptcy petition, Ms. Williams filed a third action on the Loan in state court, seeking a declaratory judgment that the lien on the Property was void and that foreclosure was time-barred and alleging claims for quiet title and violations of the Deceptive Trade Practices Act and Texas Fair Debt Collection Practices Act. The state court issued yet another TRO preventing foreclosure. The case was removed to federal court *See Williams v. Deutsche Bank Nat'l Tr. Co.*, No. 5:18-CV-00954-FB, ECF Nos. 1, 9. In March 2020, Judge Biery entered an order adopting the Magistrate Judge's report and recommendation to grant SPS's motion for summary judgment, concluding that the recission of the acceleration notice pursuant to the 2016 settlement agreement had reset the limitations clock. See *See Williams*, No. 5:18-CV-00954-FB, 2020 WL 1902539, at *1. Accordingly, the new limitations period did not begin to run until a new notice of default was issued in August 2017. *Id.*

Ms. Williams again filed for bankruptcy in January 2022. On March 23, the Trustee entered an order lifting the automatic stay and allowing foreclosure on the Property to proceed. *In re Williams*, No. 22-50019-cag, ECF No. 18. A foreclosure sale was scheduled for June 7, 2022.

In her most recent effort to avoid foreclosure, Ms. Williams commenced this action on June 3, 2022, against Defendant SPS in the 37th District Court of Bexar County, Texas, asserting claims for breach of contract, for injunctive and declaratory relief, and a request for an accounting. *See* ECF No. 1-4. In her petition, Ms. Williams alleged that there was "no default sufficient to justify foreclosure," that Defendant had "requested an improperly documented second lien on the property," and that "the notice of acceleration [was] problematic and defective" in some unspecified way. *Id.* at 4, 6–7. On June 6, the state court issued a TRO preventing the foreclosure sale of the Property scheduled for following day. ECF No. 1-5. Ten days later, Defendant removed the case to this Court based on diversity jurisdiction. *See Alberetta G. Williams v. Select Portfolio Servicing, Inc.*, No. SA:22-CV-00624-XR (the "First Action"), ECF No. 1.

While the First Action was still pending before this Court, SPS evidently scheduled another foreclosure sale for September 6, 2022. Rather than moving for a temporary restraining order in the First Action, Ms. Alberetta's counsel, Gregory Van Cleave, filed a second suit in state court to prevent the foreclosure sale, this time on behalf Ms. Williams's husband, Christopher Williams. *See Christopher Williams v. Select Portfolio Servicing, Inc.*, No. SA:22-CV-00989-XR (the "Second Action"), ECF No. 1-4. Mr. Williams asserted that there was "no default sufficient to justify foreclosure" and that the amount owed under the terms of the Loan was "well less" than the amount being requested, though he acknowledged in a supporting affidavit that he was "a decade behind" on his mortgage. *See id.* at 3–4, 9. SPS removed the case to federal court, where it was assigned to Judge Garcia, who then transferred the case to the undersigned. *See* Second Action, ECF Nos. 1, 3.

On September 14, 2022, the Court consolidated both cases under the First Action, noting that the actions were both pending before the same court and both involved the same defendant, property, and transaction and that Plaintiffs did not oppose consolidation. ECF No. 13 at 3.

On October 18, 2022, SPS filed a motion for summary judgment, arguing that the references in Plaintiffs' petitions to an improperly documented second lien and notice to vacate were "unintelligible and have nothing to do with the right of foreclosure under the first lien Loan at issue in this case" and that their claims were otherwise barred by the doctrine of res judicata. *See* ECF No. 15 at 8. Three days later, Defendant filed a motion for non-monetary sanctions, detailing Ms. Williams's extensive litigation history and seeking an order enjoining Plaintiffs from filing any future lawsuits relating to the mortgage. ECF No. 16 at 7.

On October 25, 2022, the Court held a status conference and hearing on all pending motions, but Plaintiff's counsel, Gregory Van Cleave, failed to appear. The Court ordered both parties to appear at a status conference set for the next day. At the rescheduled conference, Mr. Van Cleave explained that he was unaware of the previous day's court setting because the notice had been sent to the wrong email address. After directing Mr. Van Cleave to update his contact information on CM/ECF, the Court heard the parties' positions on the pending motions for summary judgment and non-monetary sanctions. Asked about his investigation into his clients' claims, Mr. Van Cleave stated that he was aware of previous litigation in state court but did not realize that those cases had been removed to federal court. With respect to the Second Action, Mr. Van Cleave stated that he believed Mr. Williams had independent claims, separate and apart from his wife's, and that the state court judge who signed the TRO in the Second Action was aware that the First Action had been filed and removed to federal court. Mr. Van Cleave further represented that he merely sought to preserve Plaintiffs' equity in the home and to challenge the allegedly

5

excessive Loan balance. The Court directed Plaintiffs' counsel to file a response to the pending motions and to show cause why he should not face personal sanctions for his conduct in this case in light of his failure to inquire into Plaintiffs' litigation history, flagrant disregard for this Court's jurisdiction, and failure to appear at the October 25, 2022 status conference.

Mr. Van Cleave filed an omnibus response to the pending motions and the Court's show cause order on November 8, 2022. *See* ECF No. 19 at 3. According to the response, Plaintiffs do not oppose summary judgment or the entry of non-monetary sanctions:

> Plaintiffs have been explained the effect of the [previous] litigation . . .; they now understand that their rights were prior resolved; as opposed to just being put in hold. Plaintiffs have been explained that their rights under the loan were prior limited and now are resolved through claim preclusion.
>
> Due to the above, the plaintiff asserts that they are in agreement with taking no further judicial action in any matter related to the mortgage loan. They will agree to the entering of an order requiring them to obtain permission prior to filing any future litigation relating to the mortgage.

*Id.* at 3. Mr. Van Cleave, however, maintains that he should not be personally sanctioned for his conduct in this case because he is unfamiliar with federal court practice and was merely attempting to protect his clients' equity in their home. *Id.* at 3–4.

I. **Defendant's Motion for Summary Judgment**

    A. **Legal Standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support

an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable [trier of fact] to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion

for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**B.    Analysis**

It is undisputed that Plaintiffs have been in default on their mortgage for over a decade. Ms. Williams has previously "surrender[ed] any interest in the Property . . . and agree[d] not to interfere with or contest foreclosure of the Property in any way" and released "all state or federal claims . . . arising from or related to . . . the Property . . . ." *Id.* Indeed, Plaintiffs have conceded in their response to SPS's motion for summary judgment that "their rights were prior resolved." ECF No. 19 at 3. Nonetheless, in their original petitions, both Plaintiffs asserted that there was "no default sufficient to justify foreclosure." *See* First Action, ECF No. 1-4 at 4; Second Action, ECF No. 1-4 at 4. Ms. Williams also suggested that SPS's most recent notices of default and acceleration were "problematic and defective" in some unspecified way. *See* First Action, ECF No. 1-4 at 7. Such "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation" are insufficient to defeat a motion for summary judgment, *Brown*, 337 F.3d at 541, and are further undermined by the copies of the notices SPS provided in support of its motion, *see* ECF Nos. 15-5, 15-6, 15-7.

Moreover, any claims that Plaintiffs have equity in the Property or that the mortgagee under the Loan lacks standing to foreclose are precluded by res judicata. The doctrine of res judicata contemplates, at minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983). For a claim to be barred on res judicata grounds, the Fifth Circuit requires that: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final

judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). When those elements are satisfied, res judicata "prohibits either party from raising any claim or defense in the later action that was or *could have been* raised in support of or in opposition to the cause of action asserted in the prior action." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (emphasis in original); *see also In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 861 F.2d 814, 816 (5th Cir. 1988) ("Res judicata extends to matters that should have been raised in the earlier suit as well as those that were.").

As to the last element—whether the same claim or cause of action was involved in both actions—courts apply a "transactional test, which requires that the two actions be based on the same nucleus of operative facts." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009) (internal citations omitted). Under that transactional test, a prior judgment's preclusive effect extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). Additionally, the doctrine "extends beyond claims that were actually raised and bars all claims that 'could have been advanced in support of the cause of action on the occasion of its former adjudication. . . .'" *Maxwell v. U.S. Bank, N.A.*, 544 F. App'x 470, 472 (5th Cir. 2013) (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)).

To establish a prima facie case to lift the stay under Section 362(d)(2) of the Bankruptcy Code, a movant must demonstrate the amount of its claim, that its claim is secured by a valid,

perfected lien in property of the estate, and that the debtor lack's equity in the property. *See Hill v. Wells Fargo Bank, N.A.*, No. V–12–11, 2012 WL 2065377, at *10 (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002)); *see also Puig v. Citibank, N.A.*, No. 3:11-CV-0270-L, 2012 WL 1835721, at *17 (N.D. Tex. May 21, 2012) (stating that parties are not entitled to injunctive relief where "the court has dismissed each of their claims as a matter of law"). A motion to lift the stay can have preclusive effect. *Mitchell v. Fort Davis Bank*, 243 S.W. 3d 117, 125 (Tex. App.—El Paso 2007, no pet.); *Belay v. Wells Fargo Bank, N.A.*, No. 07-19-00206-CV, 2020 WL 4249725, at *1, 2020 (Tex. App.—Amarillo July 16, 2020, no pet.). A motion to lift the stay by the Trustee was granted on March 23, 2022, allowing foreclosure on the Property to proceed. *In re Williams*, No. 22-50019-cag, ECF No. 18. Accordingly, all claims or allegations that Plaintiffs could have raised in opposition to the motion to lift stay relating to Deutsche Bank's right to foreclose (through SPS or otherwise) are precluded by the doctrine of res judicata.

Moreover, despite Mr. Van Cleave's arguments to the contrary, claim preclusion also applies to Mr. Williams's claims since he was in privity with his wife, the borrower, at all times during the bankruptcy proceedings. *See Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992) (citing *Terrell v. DeConna,* 877 F.2d 1267, 1272–73 (5th Cir. 1989) (concluding that a twice-sued defendant could assert issue preclusion as a defense to non-party spouse's legally derivative claim)); *see also In re Constructors of Fla., Inc.,* 349 F.2d 595, 599 (5th Cir. 1965) (any attempt by the parties, or anyone in privity with them, to relitigate matters that could have been raised in a prior bankruptcy proceeding is barred under the doctrine of res judicata).

Accordingly, the Court concludes that SPS is entitled to judgment of a matter of law in all respects and that Plaintiffs' claims must be **DISMISSED WITH PREJUDICE**.

## II.   Defendants' Motion for Non-Monetary Sanctions

Defendant asks the Court to enter an order "requiring Plaintiffs to seek permission from this Court prior to filing any future lawsuits relating to the same mortgage against Defendant or the mortgagee under the subject loan" and for "such other relief to which Defendant may show itself to be entitled." ECF No. 16 at 7.

### A.   Legal Standard

Federal courts have the inherent power to sanction bad-faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). This inherent power includes the power to assess attorney's fees and litigation costs when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Indus. Lumber*, 417 U.S. 116, 129 (1974). This power, however, "must be exercised with restraint and discretion." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980). Accordingly, "a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct." *In re Yorkshire LLC*, 540 F.3d 328, 332 (5th Cir. 2008).

In addition to monetary sanctions, district courts also possess the power to issue a pre-filing injunction to deter vexatious filings with the court. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 186 (5th Cir. 2008) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)). Such a pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson*, 808 F.2d at 360. When determining whether the imposition of a pre-filing injunction would be appropriate, the court must weigh all relevant circumstances, including four main factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for

pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189. The Fifth Circuit has cautioned that extending a pre-filing injunction to state court may be an abuse of discretion, as state courts and agencies "are capable of taking appropriate action on their own" and because "abuse of state judicial process is not per se a threat to the jurisdiction of Article III courts and does not per se implicate other federal interests." *Id.* at 191–92 (citing *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984)).

### B. Analysis

The Court finds that a pre-filing injunction is appropriate here, in light of Plaintiffs' clear history of filing duplicative lawsuits without a good faith basis and the significant burdens their suits have imposed on this Court and others. Given that their litigation strategy has allowed Plaintiffs to avoid making a single mortgage payment in over a decade, the Court further finds that lesser sanctions would not adequately deter their conduct. *Baum*, 513 F.3d at 189. While ordinarily the Court would limit the scope of the injunction to the Western District of Texas, Plaintiffs have agreed "not to file any judicial action in any matter related to the mortgage loan" and "to the entering of an order requiring them to obtain permission prior to filing any future litigation relating to the mortgage." ECF No. 19 at 3.

Accordingly, Plaintiffs are **ENJOINED** from filing any future lawsuits relating to the mortgage unless and until they seek and obtain written permission to do so. The Court **WARNS** Plaintiff—and Plaintiff's current or future counsel—that further frivolous filings in any future *filed or removed* case may result in the imposition of monetary sanctions.

### III. Monetary Sanctions Against Plaintiffs' Counsel

At the hearing on October 26, 2022, the Court warned Mr. Van Cleave that he was facing sanctions and afforded him fourteen days to show cause why he should not be personally sanctioned for his conduct in this case. Mr. Van Cleave timely filed a response opposing such sanctions on November 8, 2022. *See* ECF No. 19.

#### A. Legal Standard

Rule 11 provides for sanctions against "any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). This rule is "aimed at curbing abuses of the judicial system," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990), and is designed "to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions," *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 870 (5th Cir. 1988). To this end, attorneys are required to sign "[e]very pleading, written motion, and other paper" and must certify to the best of their knowledge—formed after an inquiry reasonable under the circumstances—that allegations and other factual contentions submitted to the court have evidentiary support. *See* FED. R. CIV. P. 11(a), (b)(3); *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 263–64 (5th Cir. 2007); *see also Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006) (stating that an attorney has a duty "to conduct a reasonable inquiry into the facts or law before filing the lawsuit" (internal quotations omitted)). These obligations are "personal [and] nondelegable," *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989), and they "must be satisfied; [a] violation . . . justifies sanctions." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003). In determining compliance with Rule 11, "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Id.* (internal

13

quotations omitted). "The reasonableness of the conduct involved is to be viewed at the time counsel . . . signed the document alleged to be the basis for the Rule 11 violation." *Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991).

The court may *sua sponte* order a party to show cause why conduct specifically described in the order has not violated Rule 11(b). *See Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008) (citing FED. R. CIV. P. 11(c)(3)). Although the district court need not hold a hearing, it must provide the litigant notice of the proposed sanctions and the opportunity to be heard to satisfy Rule 11 and the Due Process Clause. *See Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191–92 (5th Cir. 1996). District courts are given considerable discretion in determining the appropriate sanction to impose on a party that violates Rule 11. *Worrell v. Houston CanA Acad.*, 287 F. App'x 320, 326 (5th Cir. 2008) (citing *Thomas*, 836 F.2d at 876–77). "District courts may choose to deter individuals who violate Rule 11 with monetary sanctions. One benefit of monetary sanctions is that they may be imposed exclusively against the attorney, thereby avoiding punishment of the client for attorney misconduct." *Thomas*, 836 F.2d at 877; *see Worrell*, 287 F. App'x at 326 (district court did not abuse its discretion in assessing $6,000.00 in attorneys' fees as sanctions under Rule 11 jointly and severally against attorney and his firm). Nevertheless, while monetary sanctions may be appropriate under Rule 11, the "basic principle governing the choice of sanctions is that the least severe sanction adequate to serve the purpose [of Rule 11] should be imposed." *Id.* at 877–78. Thus, "as a less severe alternative to monetary sanctions, district courts may choose to admonish or reprimand attorneys who violate Rule 11." *Id.* at 878.

### B. Analysis

The Court finds that monetary sanctions are warranted in this case. Such a sanction is necessary to fulfill Rule 11's primary objective of "deter[ring] baseless filings and streamlin[ing]

the administration of justice . . . ." *Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 345 (5th Cir. 1990). As a preliminary matter, Mr. Van Cleave failed to conduct a reasonable inquiry into Ms. Williams's previous actions involving the Property and the Loan. Indeed, it appears that, even given an opportunity to explain his conduct in this case, Mr. Van Cleave has failed to fully investigate his clients' previous litigation. His response to the Court's show cause order states:

> The plaintiffs believed that there was equity in their home. While they do not have records from decades prior, who does, it was there [sic] belief that there was equity in their home and this was demonstrated by the fact that there was substantial prior litigation that was unresolved. They represented that the reason why there was much litigation was because neither side was aware of the facts and circumstances of the debt.

ECF No. 19 at 4. As discussed above, however, there are no outstanding factual or legal questions to be resolved in this case, and a reasonable inquiry into Plaintiffs' extensive litigation history would have revealed that.

Mr. Van Cleave has also failed to familiarize himself with the rules of federal practice. In his response to the Court's show cause order, he acknowledges that he should have moved for a TRO in federal court rather than filing a second suit in state court, but states that he failed to do so because of his "relative unfamiliarity in working in Federal Court." *Id.* at 2–3. The basis for this purported unfamiliarity is unclear to the Court, however, given that Mr. Van Cleave has been practicing in the Western District of Texas for more than a decade and has represented parties in over 70 cases that have been filed in or removed to federal court in the San Antonio division alone.

Even more concerning are the Court's doubts about Mr. Van Cleave's candor. Contrary to Mr. Van Cleave's representation at the hearing, the Court's independent inquiries revealed that state court judge who signed the TRO in the Second Action was *not* aware of the First Action. Moreover, while the email address listed on the docket sheet was apparently incorrect—and remains incorrect over two months later, —Mr. Van Cleave's attorney profile on CM/ECF, last

15

updated in February 2022, designates the *correct* email address for courtesy copies of CM/ECF notices. Indeed, the correct email address appears on the distribution list for the order (ECF No. 11) setting the October 25, 2022 status conference.

Accordingly, Mr. Van Cleave is hereby **ADMONISHED** and **ORDERED** to pay Defendant's attorneys' fees incurred in connection with the removal and consolidation of the Second Action, the October 25 status conference at which he failed to appear, and the preparation of documentation supporting such fees.

## CONCLUSION

Defendant's motion for summary judgment (ECF No. 15) is **GRANTED**. All Plaintiffs' claims against Defendant Select Portfolio Servicing, Inc. are **DISMISSED WITH PREJUDICE.** Defendant is awarded costs and may file a bill of costs pursuant to the local rules. A final judgment pursuant to Rule 58 will issue follow.

**The Court shall retain jurisdiction over this case to enforce this judgment pending the conclusion of any foreclosure proceedings involving the Property.**

Defendant's motion for non-monetary sanctions (ECF No. 16) is **GRANTED**. Plaintiffs Alberetta G. Williams and Christopher Williams are **ENJOINED** from filing any future lawsuits relating to the mortgage unless and until they seek and obtains the written permission of this Court to do so.

Before filing any new lawsuit relating to the mortgage, Plaintiff must file a motion for leave to file the action, along with a proposed complaint or petition and a copy of this order. The Clerk is instructed to not accept any new lawsuit filed by either Alberetta or Christopher Williams regarding the Property in this district unless and until such motion is filed and granted.

Mr. Van Cleave is hereby **ADMONISHED** and **DIRECTED** to pay Defendant's reasonable attorneys' fees incurred in connection with the removal and consolidation of the Second Action, the October 25 status conference at which he failed to appear, and the preparation of documentation supporting such fees.

Defendant is **DIRECTED** to submit documentation in support of the fees it has incurred in connection with the removal of the Second Action, no later than **January 30, 2022**, or seek an extension of time in which to do so.

Mr. Van Cleave is again **REMINDED** of his obligation to update his primary email address with the Clerk's Office.

It is so **ORDERED**.

**SIGNED** this 5th day of January, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE